Johnson v. Fitzhugh.

---

### JOHNSON and CLARK vs. FITZHUGH and others.

Where a decree is actually made by the court of chancery, before the discharge of a defendant under the bankrupt act, for the payment of a debt which was contracted before the proceedings in bankruptcy were instituted, such debt may be proved under the decree in bankruptcy. And the discharge of the defendant is a bar to any suit, or other proceeding upon the decree, to charge the defendant personally with the debt; unless such discharge can be successfully impeached for some of the causes specified in the bankrupt act.

Where a bill is filed against husband and wife, to foreclose a mortgage executed by them, but before a decree is obtained in that suit, the husband is declared a bankrupt, by the decree of the district court, the effect of that decree is to vest in the assignee in bankruptcy, the whole interest of both defendants in the mortgaged premises, except the inchoate right of dower of the wife in the equity of redemption. And unless the assignee in bankruptcy is made a party to the suit, after the decree in bankruptcy, a decree of foreclosure, subsequently obtained, will be a nullity, as to him; and will not foreclose his equity of redemption in the mortgaged premises.

The proper course for the complainant, in such a case, after the decree in bankruptcy has been obtained, is to file a supplemental bill, in the nature of a bill of revivor; to revive and continue the proceedings against the assignee in bankruptcy, as the party upon whom the equity of redemption has been cast by operation of law.

Johnson *v.* Fitzhugh.

In ordinary cases, although a judgment technically changes the nature of the debt, it is still in fact the same debt which was due at the commencement of the suit; and if contracted previous to the institution of proceedings in bankruptcy against the debtor it will be barred by his discharge, where such discharge is obtained subsequently to the entry of the judgment.

Since the act of May, 1840, concerning costs and fees in courts of law, &c. it is not necessary for the registers or clerks of the court of chancery, or the clerks of the supreme court, to docket decrees or judgments in the books of their own offices; and if done, it will not affect the rights of either of the parties to the decree or judgment, or cast a cloud upon the title of the defendant in such suit to his real estate.

Where a decree in chancery is entered against a defendant, subsequent to the institution of proceedings in bankruptcy by him, and he afterwards obtains his discharge, and is then sued in an action at law, upon the decree in chancery, his proper course is to plead his discharge, in bar of the suit at law; inserting in his plea the proper averments to show that the debt for the payment of which the decree was made was contracted prior to the presenting of his petition in bankruptcy; so as to be provable under the proceedings in bankruptcy, and to have been affected by the discharge.

The dictum of Bronson, J. in *Thompson* v. *Hewitt,* (6 *Hill,* 254,) that the original debt was merged and extinguished by the judgment, limited to the case which he then had under consideration.

THIS was an appeal by Fitzhugh, one of the defendants, from an order of the vice chancellor of the fifth circuit, denying the application of the defendant Fitzhugh, to set aside the docket of a decree, in the books of the clerk of this court, made on the 12th of June, 1843. The bill in this cause was filed to foreclose a mortgage, given by Fitzhugh and wife, and to obtain satisfaction of a debt which was also secured by the personal bond of Fitzhugh, dated in 1836. In January, 1843, Fitzhugh presented his petition for a discharge under the voluntary provisions of the bankrupt act, and was decreed a bankrupt on the 20th of February thereafter; and he obtained his discharge on the 5th of June in the same year. On the 3d of February, 1843, the complainants filed their bill against Fitzhugh and wife, to foreclose the mortgage; and in April, 1843, the usual decree of foreclosure and sale, and a decree over against Fitzhugh for the deficiency, was entered. The mortgaged premises were sold in May, 1843, leaving a deficiency of about $5000. The clerk of the court of chancery entered

the usual docket of the decree in his books; but no transcript was filed with the clerk of any county, so as to make the decree a lien upon the real estate of the defendant Fitzhugh. In April, 1846, the complainants commenced a suit in the supreme court against Fitzhugh, on the decree, for the deficiency, which was the first notice the defendant had that the clerk of this court had entered the decree upon his docket. The vice chancellor refused to set aside the docket of the judgment, but allowed the defendant Fitzhugh, if he should elect to do so, to come in and file a supplemental bill for the purpose of setting up his discharge, under the bankrupt act, as a bar to a personal decree against him for the deficiency; upon payment of costs, including the costs of the complainants in the supreme court.

The following opinion was delivered by the vice chancellor.

P. GRIDLEY, V. C. The defendants' counsel has strenuously insisted that the decree for the balance of the complainants' debt, which remained unsatisfied after the sale of the premises, was irregular, or at least that it was entered in bad faith; and in either case that it should be set aside or cancelled. I have been unable to discover any solid foundation for this argument. A bill filed to foreclose a mortgage against one who has given a personal obligation to pay the mortgage debt, should be regarded, since the provision of the revised statutes authorizing a decree for the deficiency, in a two fold aspect; as a proceeding *in rem*, until the premises are exhausted, and *in personam*, for the satisfaction of any remaining balance which may be due. And a defendant in such a suit, who has been personally served with a subpœna, as in this case, is just as much bound to take notice of the proceedings in the cause to charge him by a decree for the balance, as a defendant in an action at common law is bound to notice the rendition of a judgment which is regularly recorded against him after due service of process. In this case it is not denied that the complainants regularly pursued all the customary steps, in the cause, to the entering and perfecting of this decree for the balance; without the interposition of any defence, or any notice that any existed.

Johnson *v.* Fitzhugh.

Where then was the irregularity in the decree? Most clearly there was none.

But it is argued that after the sale of the mortgaged premises, the defendant was discharged as a bankrupt; and that the complainants' debt being thus extinguished, the docketing of the decree afterwards was in bad faith. If a suit for the recovery of a personal demand had been pending against the defendant, and the demand had been paid or released to the plaintiff, the entering of a judgment afterwards would have been in bad faith; but is this a parallel case? In the first place there is no pretence that the complainants had any knowledge of this discharge before the docketing of the decree, on the 12th of June, 1843. Suppose, however, they had received a notice of filing the defendant's petition, it by no means follows that they knew, or that they were to take notice, at what particular time a discharge was granted, or whether it was granted at all. On the contrary, it is the business of the defendant, who intends to rely on his discharge as a defence, to watch the proceeding in any suit that is pending against him; so as to enable him to plead it *puis darrein continuance*, or otherwise. Or if it be too late for that, to move for leave to open a default, and to do so ore tenus. (*Scott* v. *Grant*, 10 *Paige's Rep.* 485. 1 *Cowen*, 42, 165. 3 *Id.* 13. 15 *John. Rep.* 152. 18 *Idem*, 54. 1 *John. Cases*, 105.) Otherwise the judgment is not barred by the discharge. (*Rees* v. *Gilbert*, 2 *Maule & Selw.* 70. 14 *East*, 197.) Several of the authorities show that this rule is rigorously enforced in cases where any objection is set up, in the opposing papers, to the validity of the discharge. (*Baker* v. *Taylor*, 1 *Cowen*, 165. 10 *Paige's Rep.* 485. *Bangs* v. *Strong*, 1 *Denio*, 619.) In this case the opposing affidavit suggests the existence of facts having a tendency to prove the discharge fraudulent. And as to a part of the demand embraced in the decree for the balance, they set up a promise to pay; which, in *Thompson* v. *Hewitt*, (6 *Hill*, 255,) was held to be a bar to any relief on motion. The counsel for the defendant, however, relies on the remarks of the chancellor in the case of *Alcott* v. *Avery*, (1 *Barb. Chan. Rep.* 347.) I do

not think that the principle of that case conflicts in any degree with the conclusion to which I have arrived in this. The facts there differed most widely from those in this case, in two very important particulars. In that case the complainant was attempting to enforce his decree in the court of chancery—not so here. The complainants have issued no process on their decree, but have brought an action on it, in the supreme court; where the defendant may plead his discharge in bar of the decree. And unless the dictum in *Thompson* v. *Hewitt*, (6 *Hill*, 255,) that the judgment, or decree, is a new debt, and not affected by the discharge, be good law, the validity of the charge may as well be settled in that court as in this. In the case of *Alcott* v. *Avery* also, the petition of the bankrupt was filed and his discharge obtained after the decree was perfected. No opportunity therefore existed, in that case, to set up the discharge. In this case, however, after the sale of the premises, and before the filing of the report of sale and of the unsatisfied balance, there was abundant opportunity to set up the discharge, by a cross-bill. (*Mitf. Pl.* 82, 3d ed. of 1833. 10 *C. & P.* 85.) And if it had been necessary, to enable the defendant to do this, he might have moved to open so much of the decretal order of sale as declared the personal liability of the defendant for any deficiency that might be reported by the master.

For these reasons I am of the opinion that the complainants were chargeable with no irregularity, or bad faith, in docketing the decree for the balance reported by the master. But as the dictum in *Thompson* v. *Hewitt*, before referred to, may render it doubtful whether the discharge can be safely relied on, as a defence to the action on the decree, in the suit at law; and inasmuch as the defendant swears to his ignorance not only of the decree for the deficiency, but of the fact that a personal decree could be obtained in such a suit, he may be relieved, so far as to open the proceedings, and enable him to set up his discharge in a cross-bill or otherwise. This, however, must be upon payment of the costs of the proceedings thus set aside, the costs of the suit in the supreme court and of opposing this motion.

I think also the decree ought to stand as a security in the meantime. (1 *Cowen*, 165.  1 *Denio*, 619.)

*W. F. Allen*, for the appellant.  The debt for which this decree was rendered was discharged and satisfied by the proceedings and certificate in bankruptcy.  It was due and owing at the time of the presentation of the petition of the defendant to be decreed a bankrupt; was provable as a debt under the bankrupt act ; and it was not contracted by the defendant while acting as executor, administrator, or in any other fiduciary character.  (*Bank. act of* 1841, § 4.)  The only limitation or restriction upon the effect of the discharge is in the last proviso to the second section of the act ; which protects certain rights and liens, by mortgages and otherwise.  The fourth section of the act provides that the discharge and certificate, when duly granted, shall in all courts of justice be deemed a full and complete discharge of all debts, contracts and other engagements of the bankrupt, which are provable under the act.  I can see no reason why this debt was not provable under the act.  It was a debt existing at the time of the first proceedings of the defendant under the act.  The defendant was decreed a bankrupt in February, 1843.  At that time the complainants had taken no proceedings in their suit except to file a bill; which they filed after the defendant had filed his petition for the benefit of the act.  The complainants were then in a situation to prove their original debt.  For it had not then been changed in form.  It is true they would have had to discontinue their proceedings as against the defendant personally, but probably not against the property mortgaged.  That they did not prove their debt cannot affect the defendant's rights.  It is enough for him that they might have proved it.

The entry of the final decree in the suit, in April, 1843, two months before the defendant was discharged from his debts, did not so far alter or change the debt as to prevent the operation of the discharge and certificate, as a bar to any personal claim against him.  The filing the bill of foreclosure, after the commencement of the proceedings in bankruptcy, and proceeding

to a decree thereon, before the certificate of discharge, were acts of the complainants which ought not injuriously to affect the rights of the defendant. At the time the decree was grant ed he had nothing to allege either in bar, or even in delay, of the proceedings. The debt was not changed, but remained the same debt. If we admit the dictum of the supreme court, in *Thompson* v. *Hewitt*, (6 *Hill's Rep.* 254,) to be law, it by no means follows that the principle would apply to this case. There the defendant, by a voluntary confession of a judgment, renewed his liability to pay the debt. The judgment therefore was not the sole act of the plaintiff and of the court, but was rendered upon the confession of the bankrupt himself, after the presentment of his petition in bankruptcy. Not so in this case. Again; a decree in chancery is different in form, and in the remedy which it gives, from a judgment at law. The decree in this case is founded on, and refers to, the mortgage, and in all its mandates and directions refers to the mortgage, and the debt due upon it, as the thing of substance. Not so a judgment at law. Can there be a doubt that even after a sale of the mortgaged premises the complainants could have proved, for the deficiency, under the bankrupt act? (*Eden on Bankrupt Law*, 104, 107.) Could the defendant, or the other creditors, or the assignee in bankruptcy, object that the claim for the deficiency was not the debt due on the mortgage, but a new debt created after the commencement of the proceedings in bankruptcy? If they could not, then the complainants cannot now object that the debt is not barred by the decree and certificate; for the rights and liabilities of the parties must be mutual. (*Phillips* v. *Brown*, 6 *T. R.* 282. *Ex parte Hill*, 11 *Ves.* 646. *Warne* v. *Constant*, 5 *John. R.* 135.)

If the debt and claim of the complainants was provable under the bankrupt act, and was discharged by the certificate of the defendant, then he was entitled to an order perpetually stay ing proceedings upon the decree, as against him personally. His discharge was as effectual, to discharge the debt, as a discharge under the two-thirds act of this state would have been; and as effectual as a release by, or payment to, the complain-

ants. (*Deyo* v. *Van Valkenburgh*, 5 *Hill's Rep.* 442.) If after the entry of the decree of foreclosure, and the sale of the premises, the defendant had paid the deficiency or it had been released to him, the court would, if necessary, have stayed all proceedings upon such decree. And we suppose a payment of the mortgage, or a release of the defendant from personal liability on his bond, would have been equally effectual. The decree was entered before the discharge was obtained; and of course the defendant had no opportunity to set up his discharge in opposition to the entry of the decree. And the decree, when entered, was final. (1 *Barb. Ch. Pr.* 330.) In such a case, where the defendant has had no day in court to plead his discharge, the court will relieve him on motion. (*Palmer* v. *Hutchins*, 1 *Cowen's Rep.* 42. *Thomas* v. *Striker*, 3 *John. Cas.* 90. *Billings* v. *Shute*, 1 *Id.* 105. *Graham* v. *Pearson*, 6 *Hill's Rep.* 247.) The opinion of the chancellor in the case of *Alcott* v. *Avery*, (1 *Barb. Ch. Rep.* 347,) recognizes the principle for which we contend; and that this defendant is entitled to the relief he asks.

The court of chancery having jurisdiction of the subject matter, and of the parties, by the proceedings in the suit, will exercise that power, which is sometimes exercised by the supreme court in the exercise of its equitable jurisdiction, by perpetually staying the proceedings of a party upon a decree of the court, when such party undertakes, or is about to enforce, or in any way make use of such decree, in a manner illegal, oppressive, or unjust; and will not drive the party to a bill for an injunction, unnecessarily. The affidavit of Johnson does not bring this case within the decision in *Scott* v. *Grant*, (10 *Paige*, 485.) His affidavit is adroitly drawn, for effect. In the suit brought in the supreme court the discharge is pleaded, and the plaintiffs set up no fraud; but they rely entirely on the doctrine of a *novation* of the debt, by the decree. In order to bring themselves within the decision in *Scott* v. *Grant*, the complainants should have stated, on oath, their intention to contest the validity of the discharge; and then the vice chancellor might have directed an issue, or in some way have disposed of the matter. The

Johnson v. Fitzhugh.

decree is prima facie discharged by the certificate. And if the complainants desire to enforce it, why may they not be the actors by a proceeding in this court, founded on the decree; as by a petition for leave to issue execution, notwithstanding the discharge?

The vice chancellor erred in imposing the payment of costs of entering the decree, the costs of the suit in the supreme court, and the costs of opposing the motion made by the defendant, as a condition of granting relief. If we are right as to the effect of the discharge, the defendant was entitled to relief, or rather to the protection afforded him by his discharge, as a matter of right, and not as a favor. Even if we were wrong, still it was not a case for the imposition of costs, in the exercise of a proper discretion. The defendant could hardly be said to be in default for not knowing that the complainants would attempt to enforce a decree legally and equitably barred by his certificate. The complainants were irregular, also, in docketing their decree; and costs should have been granted against them. The debt was barred by the certificate. No further action of the court could be had in the premises. The docketing of the decree, like the issuing of an execution, was the irregular act of the party. The defendant could not be heard against it; and he therefore moved to set it aside, as soon as he had notice of it. The docketing of the decree was an injury to the defendant, even if there was no further action thereon by the complainant. Why make the defendant pay the costs of any proceedings in the suit? He does not seek to avoid any thing done prior to the decree, or to disturb the decree, or the proceedings under it. He only asks that the complainants may not now proceed farther upon it against him personally. Why make him pay the costs of the suit in the supreme court? That suit was unnecessary. If the decree was valid, an execution could have been issued upon it in this court. The only object of that suit was costs, or the hope that the defendant might be entrapped in some way. We therefore insist that the motion of the defendant to vacate the docket of the decree with costs should have been granted by the vice chancellor; whether any other or dif-

Johnson *v.* Fitzhugh.

ferent relief was granted or not.  And we also contend, in addition to this, that the complainants should have been perpetually stayed from proceeding in this court, or in any other court, against the defendant personally, upon the decree.  Or if the court understood, from the affidavit of Johnson, that the complainants intended or desired to contest the validity of the discharge, as to which there is no pretence, then the motion might have been denied, unless the defendant at once consented to a feigned issue to try the question as to the validity of the discharge.  And in case an issue was awarded, the question of costs should have been reserved until the result was known.  Or if the complainants declined an issue, then the motion should have been granted, with costs.

*L. Johnson,* for the respondents.  I believe this is the first time that a party has had the hardihood to ask for a favor of a court, and at the same time to ask that the party at whose expense the favor is to be granted, should pay the costs of the application.  But the pretence here is, that every creditor of a bankrupt is to be presumed to have certain knowledge that the bankrupt has obtained his discharge, and when he obtained it; and that it is to be also presumed that such discharge is free from all fraud, or any thing which can impeach its validity.  And that in equity and good conscience the obtaining such discharge is to be considered as honestly and fairly paying such debt in gold or silver coin.  Now is such the effect of a bankrupt's discharge?  It is admitted that a discharge regularly and fairly obtained, under the bankrupt law, and properly interposed as a defence, either by plea or otherwise, so that those to be affected thereby may have an opportunity to test its validity, may be as available to the bankrupt as a payment of the debt.  But even then it is not considered as a payment.  There still remains a moral obligation to pay, which is a sufficient consideration to support a new promise.  (*Scouton* v. *Eislord,* 7 *John. Rep.* 86. *Erwin* v. *Saunders,* 1 *Cowen's Rep.* 249.)  Such also is the case with a debt barred by the statute of limitations.  There can therefore be no moral or legal wrong in the party who seeks

to collect what is in fact as honestly due to him as though no such defence existed. The cases are numerous where a plaintiff seeking to collect such a debt has been allowed, upon the bankrupt's pleading his discharge, to discontinue without paying costs. (*Hall* v. *Gordon,* 1 *How. Pr. Rep.* 99.) And this rule is without exception, even although the party thus seeking to collect his debt had the most perfect knowledge of the application for such discharge before he commenced his suit. So, even also where the defendant offered to stipulate, not to plead the discharge. But no case, I believe, can be found, in which a party seeking to recover a debt which had not been fully paid, has the defendant been relieved from the payment of costs.

The rule and course of practice in the supreme court, where relief is granted in cases somewhat analogous to this, is for the defendant to move to open the judgment, and for leave to come in and plead his discharge ; and if the case be a proper one, and no laches imputable, the court will grant leave, &c. on the defendant's paying costs of entering the judgment, and of opposing the motion. (*Wolfe* v. *Wynkoop,* 1 *How. Pr. Rep.* 56.) Whether the defendant shall be let in to plead his bankrupt discharge, is a matter of discretion with the court. (*Hunter* v. *Schuyler, Id.* 96.) But the defendant must move for leave to plead his discharge at the first opportunity. (*Hall* v. *Gordon, Id.* 99.) In all these cases, the bankrupt was relieved on the ground, either that the judgment was obtained against him before the presenting of his petition, and the judgment was sought to be enforced by execution; so that he had no opportunity to have the validity of his discharge tested by a trial; or some step had been taken during the pending of the suit and before the discharge was granted. But I cannot find any case where the judgment or decree was actually rendered before the discharge, as in this case, in which relief has been granted at all. So that I think the vice chancellor went even further in giving relief to this defendant, than any of the cases warranted. This appeal was probably brought upon the remarks of the chancellor in the case of *Alcott* v. *Avery,* (1 *Barb. Ch. Rep.* 347,) that it is irregular to issue execution upon a judgment or decree

Johnson v. Fitzhugh.

which prima facie is no longer in existence, as against the defen-
dant or his property, without previous application to the court,
&c. But it seems to me that this is sufficiently answered by
the vice chancellor in his opinion in this case. Besides, the
bringing of a suit on the judgment or decree, as in this case,
where the defendant has an opportunity to set up his discharge
as a defence and have the validity of it fully tested, may be
considered as the previous application to the court upon notice; as
mentioned by the chancellor in *Alcott* v. *Avery*. For if the
debt or decree for the deficiency was fully discharged and sat-
isfied by the bankrupt's discharge, so that the complainants
have no right to recover in the suit at law, then there could be
no occasion for this motion. For the defendant might safely
plead the discharge at law, and defeat the recovery there.

THE CHANCELLOR. The decree in this case was undoubt-
edly irregular, as the assignee in bankruptcy was not brought
before the court. And if the defendant was personally liable
for the deficiency after his discharge subsequent to that decree,
and if he had applied within a reasonable time after he had no-
tice of the entry of a decree for the sale of the mortgaged premises,
he would have been entitled to have such decree set aside. As
I understand the case, the title to the equity of redemption in
the mortgaged premises, was in Fitzhugh at the time of the
filing of the bill in this cause, and he and his wife alone were
made parties to the suit; but before the decree, and even be-
fore the bill was taken pro confesso against them, Fitzhugh
was declared a bankrupt, by a decree of the district court.
The effect of that decree was to vest in the assignee in bank-
ruptcy the whole interest, of both defendants, in the mortgaged
premises, except the inchoate right of dower of Mrs. Fitzhugh
in the equity of redemption. And as the assignee in bankruptcy
had not been made a party to the suit, as he should have been
after the decree in bankruptcy had been entered, the decree of
foreclosure and sale was a mere nullity as to him; and it could
not foreclose his equity of redemption in the mortgaged premises.
The effect of such an erroneous proceeding would necessarily

be to prevent bidding at the sale made by the master. For a purchaser would not get a perfect title to the mortgaged premises under such a decree. The proper course for the complainants, after the decree in bankruptcy, which vested the title to the equity of redemption in the official assignee, was to file a supplemental bill in the nature of a bill of revivor, to revive and continue the proceedings against such assignee, as the party upon whom the title to the equity of redemption had been cast by operation of law. Had that been done, the mortgaged premises could properly have been sold under the decree, so as to give a perfect title to the purchaser; and the bankrupt would have been rightfully charged with the deficiency if he should not succeed in obtaining his discharge, so as to exempt him from personal liability.

I am satisfied, however, that the defendant Fitzhugh has no interest in this question; if his affidavit is true, that he has been fairly and legally discharged from his debts, subsequent to the entry of the decree in this cause. Where a decree is actually made before the discharge of the defendant, under the bankrupt act, for the payment of a debt which was contracted before the proceedings in bankruptcy were instituted, such debt may be proved under the proceedings in bankruptcy. And the discharge of the defendant is a complete and perfect bar to any suit, or other proceeding, upon the decree, to charge the defendant personally with the debt; unless the discharge can be successfully impeached, for some of the causes specified in the bankrupt act. The language of Mr. Justice Bronson, in the case of *Thompson* v. *Hewitt*, (6 *Hill*, 254,) that the original debt was merged and extinguished by the judgment, must be confined to the case then under consideration. There the debt and costs for which the judgment was entered did not exist at the time of the presenting of the petition in bankruptcy. The plaintiff was claiming a debt, the existence of which was disputed by the defendant. And, as a compromise, it was agreed between the parties that a cognovit should be given, for a certain specified sum, upon which the plaintiff might enter up his judgment; and with an express understanding that any discharge which the defendant might thereafter obtain, under the proceedings in bankruptcy

Johnson v. Fitzhugh.

which had previously been instituted, should not affect the judgment for the new debt thus created by the compromise. In ordinary cases however, although a judgment technically changes the nature of the debt, it is still in fact the same debt which was due at the commencement of the suit; and if contracted previous to the institution of the proceedings in bankruptcy it will be barred by the discharge, where such discharge is obtained subsequent to the entry of the judgment.

The mere entry of the decree in this case in the docket of the clerk could not affect the rights of the defendant, in any way. Previous to the adoption of the revised statutes, a rule of this court required the register and assistant register to docket all enrolled decrees, in the manner in which judgments were docketed in the supreme court; not for the purpose of making the decree a lien upon the real estate of the party, but as a matter of reference, to facilitate searches. The revised statutes authorized the docketing of all enrolled decrees directing the payment of any debt, damages, costs, or other sum of money; and made such decree, when docketed in the manner prescribed by the statute, a lien upon real estate. But in addition to the docket which had formerly been kept, pursuant to the rule of the 5th of May, 1825, the revised statutes required a transcript thereof to be sent by the register, or the assistant register, or clerk, with whom the decree was enrolled, to each of the clerks of the supreme court; to be entered in the docket of judgments in their offices respectively. (2 R. S. 182, § 95.) The statute having rendered the rule of May, 1825, unnecessary, it was left out on the revision of the rules which went into operation on the first of January, 1830, and in subsequent revisions. The act of May, 1840, concerning costs and fees in courts of law and for other purposes, (*Laws of* 1840, *p.* 334,) afterwards dispensed with the necessity of docketing judgments or decrees, either in the offices of the registers and clerks of this court, or with the clerks of the supreme court; and only required them to be docketed in the offices of the clerks of the counties where the premises were situated, in order to make them liens upon real estate. But as it was most convenient, for the purpose of giving the transcript

Johnson *v.* Fitzhugh.

required by the act of May, 1840, to enter the docket of the judgment or decree in their own books in the first place, it has, I believe, been the practice of the officers of this court, as well as of the supreme court, since that time, to docket the judgment or decree in the books of their own offices in the first instance; although it is no longer necessary to do so, and does not affect the rights of either of the parties to the judgment or decree. As this entry of the substance of the decree in the docket of the clerk of this court, therefore, was merely for the convenience of the clerk, to enable him to make a transcript of the decree to be docketed if such transcript should thereafter be required, and could not cast a cloud upon the title of Fitzhugh to real property any more than the enrolled decree itself could, he had no right to apply to have it set aside.

His proper course is to plead his discharge in bar of the suit at law upon the decree; inserting in his plea the proper averments to show that the debt, for the payment of which that decree was made, had been contracted before the presenting of his petition in bankruptcy, so as to be provable under the proceedings in bankruptcy, and affected by the discharge which was granted subsequent to that decree. The order appealed from does not deprive the appellant of the right to make this defence in the suit at law, upon the decree, but merely gives him the right to litigate the question of the validity of his discharge upon a supplemental bill in this court, if he elects to proceed in that manner. The complainants, perhaps, might have appealed from the order, upon the ground that the applicant had no right to any relief in this court; and that they had the right to a jury trial, in a court of law, upon the question of the supposed fraud in obtaining the discharge. But the order is not erroneous as to the appellant. It must therefore be affirmed, with costs.