E. D. PAYNE vs. JOHN J. BEECH and others.

October Term, 1876.

BILL OF REVIEW—PROCEEDINGS IN REVIEW.—A bill of review for error apparent is in the nature of a writ of error, and, upon opening the enrolment, the parties proceed as at a rehearing on a writ of error; and, if the review be for new matter, the original cause and the bill are heard together.

BILL OF REVIEW FOR ERROR APPARENT—DISCHARGE IN BANKRUPTCY.—After a decree has been set aside for error apparent, by the defendant, he may upon proper proceeding, rely, as a defence to a personal decree against him, upon a discharge in bankruptcy obtained after the filing of his answer in the original cause and before the rendition of the decree reviewed, but such discharge will not affect any lien on property acquired by the complainant.

PLEADING NEW MATTER ARISEN AFTER BILL FILED.—New matter arising between the filing of the bill and defence made may be pleaded in analogy to the rule at law, but the remedy when such matter occurs after issue is by supplemental bill, or cross-bill.

*M. M. Brien*, for complainant.

—— *Hicks*, for Beech.

THE CHANCELLOR :—The facts in this case are set out in full in the report of *Randall* v. *Payne*, 1 Tenn. Ch. 137. The complainant, Payne, had, on the ·17th of October, 1872, recovered a decree against the defendant Beech for $19,527.50, being the entire consideration agreed to be paid for the tract of land sold by Beech to Payne, and that certain lots conveyed by Payne to Beech, in part of this consideration, be subjected to the satisfaction of said decree. Randall was the owner of one of these lots, and filed his bill to review and reverse this decree so far as he was con-

cerned, and it was reversed by this court for error of law apparent. 1 Tenn. Ch. 452. In the meantime Beech filed his bill of review, and at the last term of this court the decree of the 17th of October, 1872, was also reviewed and reversed as to him for error of law apparent. The error apparent was the first error on which the reversal as to Randall was decreed—namely, that it appeared from Payne's own bill that he had retained a lien on the lots conveyed by him to Beech only for the unpaid balance of purchase money due from Beech to his vendor on the land conveyed by him to Payne, and that a decree for the whole consideration was clearly erroneous. A bill of review for error apparent is in the nature of a writ of error. *Smith* v. *Clay*, Amb. 647. Upon reviewing the decree in such a case, or, as it is technically styled, opening the enrolment, the parties are at liberty to proceed as at a rehearing on a writ of error. *Catterall* v. *Purchase*, 1 Atk. 290. If the review be for new matter, the original cause comes on at the same time with the bill of review, for which purpose a petition to rehear the cause is required by the English practice, where the bill is filed before enrolment. *Moore* v. *Moore*, Dick. 66 ; *s. c.*, 2 Ves. 597. The same result would follow without the petition after the enrolment is opened. The bill of review and the original cause are in fact heard together, and, ordinarily, the court proceeds at once to render such a decree as ought to have been rendered. *Cook* v. *Bamfield*, 3 Swans. 607. But the record in this case disclosed the fact that the original bill was lost, and that the complainant, without any order of court, had undertaken to file what he styled a "supply bill" in place of the original. It also appeared that, after Beech had put in an answer in the original cause, and before the decree sought to be reviewed, he had filed a petition in bankruptcy and obtained a discharge from all preëxisting debts provable under the bankrupt law. This discharge, having been obtained before the decree sought to be reviewed, could not, of course, be used in reviewing the decree, for it did not appear in the record, and could not

be relied on as new matter which had come to the party's knowledge since the decree. I supposed, after the reversal of the original decree, the complainant might ask permission to supply the lost bill, and the defendant might probably move the court to take the so-called "supply bill" off the files, and, at any rate, for leave to exhibit a cross-bill to bring before the court the new matter of the discharge in bankruptcy. Although matters which arise between the bill and defence made may be pleaded in analogy to the rule at law (*Turner* v. *Robinson*, 1 Sim. & St. 3; *Sergrove* v. *Mayhew*, 2 Mac. & G. 97; *Lane* v. *Smith*, 14 Beav. 49; *Jones* v. *Binns*, 33 Beav. 362; *Campbell* v. *Joyce*, L. R. 2 Eq. 377), yet the remedy where such matters arise after issue is by supplemental or cross-bill. *Hayne* v. *Hayne*, 3 Ch. R. 19; *Miller* v. *Fenton*, 11 Paige, 18; *Johnson* v. *Fitzhugh*, 3 Barb. Ch. 360; Coop. Eq. Pl. 86. I, therefore, reversed the decree, leaving the original cause to be proceeded with as the parties might be advised.

When the case was called at this term, the learned counsel on both sides concurred in handing the papers to the court for final decision, without suggestion. Upon looking at them I found the only addition was a plea by the defendant Beech of his discharge in bankruptcy, filed October 2, 1876, the day on which the present term of the court commenced. As this plea had not been set for hearing on its sufficiency, and as no motion had been made to take it off the files as unknown to the forms of the court after a previous defence by answer, I supposed both parties, without regard to form, simply desired an expression of opinion by the court as to whether the matter of the plea would be a good defence if properly brought before the court. Accordingly I stated that, although the form of bringing the matter before the court might not be correct—as to which I gave no opinion, the point not being before me—yet the matter was, if the proper mode of proceeding were adopted, a good defence to the bill, the claim upon which the bill was based being clearly provable against the estate of the

bankrupt; but that as the defendant, by reason of his neg-. lect to bring it forward promptly, had occasioned unnecessary costs, I suggested that a decree declaring the debt discharged, and that the defendant Beech pay the costs, would meet the merits. *Stratton* v. *Perry*, 2 Tenn. Ch. 633. The learned counsel for the complainant has, however, handed me back the papers, with the suggestion that his client is probably entitled to the lien on the lots reserved in his deed to Beech, notwithstanding the discharge in bankruptcy of the latter, omitting the lot subsequently conveyed by Beech to Randall, the litigation as to which has been settled. If the complainant is, upon the pleadings and proof, entitled to subject the lots for any portion of the debt for which he reserved a lien upon them, it is clear that he is entitled to a decree to that extent, to be enforced against the property attached, but not to a decree against the debtor or any other property. *Doe* v. *Childress*, 21 Wall. 646. It becomes necessary, therefore, to examine the record in the original cause, and to see whether the complainant was entitled to any, and what, decree prior to the defendant's discharge in bankruptcy.

The original bill is not on file, but among the papers are two "supply bills," one dated November, 1869, and the other July 1, 1870. Neither is marked as filed by the clerk, and there is no order of court authorizing the filing of either. Strictly speaking, the court cannot notice either, unless the filing the plea of bankruptcy, which was itself as unauthorized as the supply bill, may be treated as waiving any objection to the latter. Both of the "supply bills" make the deed from Beech to Payne and the deed from Payne to Beech exhibits, and ask a recovery for the whole of the consideration of the first deed, because of the enforcement of the vendor's lien on that tract by A. & J. Stretch for unpaid purchase money. The deed from Payne to Beech describes this lien debt as being for about $1,400, and it is for this debt that a lien is retained by Payne on the face of his deed. But the defendant Beech, in his

answer, says he knows nothing of any judgment obtained by A. & J. Stretch against him, under which the land was sold as charged, nor of any claim of A. & J. Stretch against him which was a lien upon said land, and insists that he has paid the last of the purchase notes, and has it in his possession. These denials throw the burden of proof upon the complainant, and he has made none. Moreover, the deed from Beech to Payne shows that he received, in part consideration of the land conveyed, three notes of L. J. Jennings, endorsed to him by Payne, for sums amounting, with interest, on the 12th of February, 1860, to $2,260 ; another note on A. B. Shankland, due 3d April, 1860, for $193.75, and another note of Payne himself, due 12th of February, 1860, for $251.79, and the lots mentioned in deed No. 2, on one of which it is recited the Nashville Building and Loan Association hold a mortgage, and on two others of which it is further recited that there is a lien for " about $1,600 of purchase money." The deed also recites that a lien is retained on the land conveyed by Beech to Payne " until all the notes named in this conveyance are paid in full ; also until all the liens, mortgages, or other encumbrances are fully paid off or removed on the real estate named." It is obvious, therefore, if Payne retained a lien for about $1,400 on the lots conveyed by him, Beech retained a lien for three or four times that amount on the land conveyed by him. In his answer Beech insists that the liens on the lots conveyed to him by Payne " have never been discharged." Here, again, the complainant has made no proof. If, now, Payne, by neglecting to pay off the Stretch encumbrance of only $1,400, thereby threw a loss upon Beech of a greater or even equal amount, whatever may be his rights at law, he has no *status* in a court of equity. And, at any rate, here are mutual and corresponding equities between these parties which cannot be adjusted without ample proof of all the facts upon which the rights of the party demanding redress rest. No such proof exists in this record to sustain the complainant's demand of redress to any extent.

The denials of the answer and the nature of the transactions required something more than mere pleading and exhibits. I am of opinion that the complainant has failed to make out any case for relief. But I am also of opinion that, under the circumstances, the defendant ought to be charged with the costs. And the court, proceeding to do now what probably it ought to have done on the hearing of the bill of review, directs a decree to be entered accordingly.