# JAMES KELLY *et al.*

*v.*

# JOHN DONLIN *et al.*

1. STATUTE OF LIMITATIONS—*claim and color of title under the limitation law of* 1839. A claim of title under a regular chain of conveyances, commencing with an administrator's deed, which was invalid, and extending through a series of years, when it appears that valuable considerations have been paid for the various conveyances, and the parties to such conveyances have, during all the time, dealt with the land as their own, constitutes claim and color of title made in good faith, and, coupled with possession and payment of taxes for seven consecutive years, forms a bar to a suit for the recovery of the land, under the Limitation Act of 1839.

2. SAME—*what will avoid the operation.* If the owner of the paramount title to land is enjoined, at the suit of one in possession, from setting up or insisting upon any title or interest in the land, such injunction will afford sufficient equitable ground for not allowing the running of the statute to ripen into a bar of the owners right, whilst such injunction was in force.

3. FORMER ADJUDICATION. A valid judgment for the plaintiff sweeps away every defense that should have been raised against the action; and this, too, for the purposes of every subsequent suit, whether founded upon the same or a different cause.

4. A judgment which affects directly the estate and interest in land, and binds the rights of the parties, is at least as effectual as a release or confirmation by one party to the other. Such an estoppel makes part of the title, and extends to all who claim under either of the parties to it. It runs with the land, and extends to all who are privies in estate to either of the parties.

5. A bill in chancery, amongst other things, alleged that, by means of a sale made by an administrator, the heirs of the decedent were divested of all their interest in the land, except the naked legal title, and the prayer was, that the sale of said land made by the administrator be decreed to have vested in the purchaser all the estate, right and title in the land whereof the decedent died seized, and which, upon his death, became vested in his heirs, and that such heirs be enjoined from setting up or insisting on any right, title or interest in the land. A decree was rendered which found that the estate of the decedent in the land became vested in the purchaser at the administrator's sale, and ordered the heirs to convey, etc: *Held*, that this decree was conclusive of the rights and title of the heirs, and that the fact that the only specific objection made by

the heirs or considered in said suit, as to the validity of said administrator's sale, was, whether their ancestor died seized of such an estate as could be sold for the payment of his debts, does not change or lessen the conclusiveness of the decree. If any other objection existed to said administrator's sale, they should have made it in that suit; and having failed to do so, they are estopped from insisting upon it in another suit about the same land.

6. JURISDICTION—*may be acquired by appearance, without service.* Where a husband and wife employed an attorney, and authorized him to bring an ejectment suit for the recovery of their land, and a bill in chancery was filed, and an injunction granted, staying the prosecution of such suit, and the attorney filed an answer, for the husband and wife, to such bill, the court thereby acquired jurisdiction of their persons, for the purposes of such injunction suit, although no summons or return may appear in the record.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

Messrs. AYER & KALES, for the appellants.

Messrs. ROSENTHAL & PENCE, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in equity, for partition, filed by John Donlin and Catharine J. Crouse, heirs of John Donlin, senior, against James Kelly and David Mergentheim, and others, the bill alleging that, by reason of the death of their father, John Donlin, intestate, leaving the complainants and Mary Donlin, his children, surviving, and, also, by reason of the death of the said Mary, leaving them and their mother, Julia Donlin, surviving, they, the said John and Catharine, each became seized in fee of the undivided five-twelfths of the premises in question, and that the said Kelly and Mergentheim, by reason of a conveyance to them by the said Julia of the share she inherited from her daughter Mary, became seized of the undivided two-twelfths of the premises.

The decree of the court below found that Catharine J. Crouse had no interest in the property; that John Donlin had an undivided five-twelfths interest therein, and that

380 KELLY *et al. v.* DONLIN *et al.* [Sept. T.

Opinion of the Court.

Kelly and Mergentheim owned the remainder, an undivided seven-twelfths, and partition was decreed accordingly.

Kelly and Mergentheim have appealed, and Catharine Crouse has assigned cross-errors, asking the decree to be reversed as to her.

Kelly and Mergentheim set up title to the whole premises, under a purchase of them by one Lally, at an administrator's sale for the payment of the debts of John Donlin, senior, deceased.

The title acquired under that sale has been decided by this court to be invalid, and the proceedings in administration, whereby it was effected, to be void, for the want of notice to the heirs of Donlin. *Donlin* v. *Hettinger et al.* 57 Ill. 348.

Kelly and Mergentheim further set up the Statute of Limitation of 1839, as a bar of all claims of the heirs of Donlin to the land.

The deed of the administratrix to Lally was made August 1, 1851.

November 10, 1854, Lally conveyed the premises to James Donohue.

July 22, 1856, Donohue contracted to sell the property to Hettinger and Oertel, for $8000. Oertel, after receiving the contract, in order to secure a certain indebtedness, made a deed of trust to one Strauss of an undivided half of the premises. About the same time, Hettinger, to secure an indebtedness to Kelly and Mergentheim, made a deed of trust to Burgess of the other undivided half. The indebtedness secured by both deeds of trust was owned by Kelly and Mergentheim.

On December 19, 1859, Strauss and Burgess, in execution of the powers of sale contained in the trust deeds, sold and conveyed, each, an undivided half of the premises to Kelly and Mergentheim.

Also, on May 29, 1860, one Freer, as special commissioner, under an order of court, in a proceeding against the heirs of Donohue, the amount due under the contract with Donohue

having been fully paid, executed a deed to Kelly and Mergentheim purporting to convey to them the whole of the premises.

There can be no question, that, under the decisions of this court, there were here claim and color of title in Kelly and Mergentheim, made in good faith. It is admitted by the appellees that Kelly and Mergentheim went into possession of the premises in 1860, and continued such possession, and paid all taxes legally assessed thereon, for seven consecutive years. This, under the Limitation Act of 1839, forms a legal bar of appellees' claim to the land.

But, in avoidance of its operation in the present case, the appellees set up that they were all that time under an injunction, which prohibited them from maintaining a suit for the recovery of the possession.

On the 5th of August, 1859, the appellees, John Donlin and Catharine, brought an ejectment suit in the Superior Court of Chicago, against Hettinger and Oertel, to recover possession of the premises. At the October term, to-wit: October 3, 1859, Hettinger and Oertel filed their bill in chancery, in said court, against the said John Donlin and Catharine, for an injunction to restrain the prosecution of the ejectment suit, and, on the 17th day of November, 1859, a decree was entered in the chancery cause perpetually enjoining the said John and Catharine from prosecuting that ejectment suit, and from ever setting up or insisting upon any estate, title or interest in the land adverse to Hettinger and Oertel, and from commencing any other suit to recover the possession of the land. This is the injunction referred to.

Courts of equity interfere, in many cases, to prevent the bar of the Statute of Limitation being set up where it would be inequitable or unjust. 2 Story Eq. Jur. sec. 1521; *Doughty* v. *Doughty*, 2 Stockt. 347; *Henry County* v. *Winnebago Drain. Company*, 52 Ill. 300.

It would be unconscientious for a party to take advantage of the holding possession of land for a certain term, to defeat

another's right thereto, when the latter, by procurement of the former, had been enjoined by a court, during all the time, from prosecuting and bringing suit for the recovery of the possession. One principle upon which courts of equity give relief, is, to prevent an advantage gained at law from being used against conscience.

But it is answered, that possession alone did not create the bar, but possession coupled with the payment of taxes, and that the Donlin heirs might have arrested the running of the statute, by paying the taxes; that they were not restrained from doing that.

The injunction was, not to set up or insist upon any estate, title or interest in the land. Paying taxes is, under the statute, under certain conditions, a mode of defeating and of acquiring title to real estate, and it would seem like the asserting of an interest in land.

We are not prepared to say that the appellees might not reasonably suppose that an implicit obedience to the injunction required that they should refrain from paying taxes on the land. Besides, it is not certain that they could have stopped the running of the statute by payment of the taxes. Whether they would be able to first pay them, might depend upon the result of a race of diligence with the possessors of the land, who were interested in paying the taxes themselves, that they might strengthen their possession into a bar under the statute. The only sure, effective mode of arresting the running of the statute was, by bringing suit for possession, and that was enjoined.

We are disposed to regard the existence of this injunction as a sufficient equitable ground for not allowing the bar of the Statute of Limitation here set up to prevail.

This; then, leaves the title to John Donlin's interest in the land whole, as it descended to him. There is nothing to affect it.

But with Catharine J. Crouse it is different.

The injunction suit before referred to was taken by writ

of error to this court, and the decree reversed as to John Donlin, the case being the one above cited of *Donlin* v. *Hettinger et al.* 57 Ill.; but as to Catharine Crouse, then Catharine Fitzgerald, the writ of error was dismissed, as not having been brought within time as to her. So that the decree in that injunction suit remains in full force against her, and it is relied upon, by the appellants, as a conclusive adjudication against her interest.

To that bill, brought by Hettinger and Oertel, John Donlin and Catharine J. Crouse, heirs of John Donlin, senior, Malachi and Daniel Donohue, the children and only heirs of James Donohue, deceased, Strauss, Burgess, and Kelly and Mergentheim, were made parties defendant. The bill was for specific performance as to some of the parties, the Donohues, and for a perpetual injunction against the heirs of Donlin, to prevent them from further prosecuting the ejectment suit against the complainants in the bill. The bill set out, among other things, the administratrix's proceedings for the sale of the land to pay the debts of Donlin, deceased, the sale and deed of the administratrix to Lally, the deed of Lally to James Donohue, the contract of Donohue to sell the property to Hettinger and Oertel for $8000, possession thereupon taken by the latter, their payment of taxes to the time of the bill filed, and payment of $5000 on the contract, and their readiness to pay the balance, and then alleged that, by reason of the above, the complainants ought to be decreed and held, upon payment of the amount remaining due under their contract with Donohue, to be the absolute owners of the land, without further molestation from the heirs of John Donlin. The bill also set out the making of the trust deeds to Strauss and Burgess, after the contract of sale by Donohue, to secure a debt to Kelly and Mergentheim, who were, therefore, made parties. Hettinger and Oertel prayed, in the bill, specific performance from the heirs of Donohue, and a deed from John and Catharine, the heirs of Donlin, who, as yet, (according to the theory of the bill,) held

the naked legal title conveyed to the heirs by Bushnell. Bushnell had made a deed of the land to the heirs of John Donlin, after the death of the latter, Donlin having purchased and paid for the land in his lifetime. The bill also prayed that the administratrix's proceeding and sale be decreed to have vested in Lally the estate, right, title and interest in the land whereof Donlin died seized, and which, upon his death, became vested in his heirs, and that the heirs of Donlin be barred and enjoined from setting up or insisting upon any right, title or interest in the land.

The decree, in addition to the portion of it before referred to, found that, by the administratrix's sale and deed, the estate and interest of Donlin, senior, became vested in Lally, and that the heirs of Donohue were entitled to conveyance thereof, subject to the equities of the complainants under their contract with James Donohue, and a deed was decreed accordingly from John Donlin and Catharine, and Freer was appointed a special commissioner to make a deed for them in case of their default; and it was also decreed that Hettinger and Oertel, or their assigns, be at liberty to come in on the foot of the decree, and, upon proving payment of the sum due under the contract with James Donohue, to compel a conveyance to them from Daniel and Malachi Donohue, the heirs of James Donohue.

There hardly seems room for question, that such a decree, under a bill containing such allegations, would conclude the right of Catharine, and protect Hettinger and Oertel, if they were the defendants in this suit, and in adverse possession of the land. The decree shows that she has nothing in the premises.

It is urged, that as the only specific objection to the validity of the administratrix's proceedings taken or considered in the injunction suit was, whether Donlin died seized of such an estate as could be sold for the payment of his debts, that was the only issue involved in the suit, and did not preclude inquiry, in another suit, whether the proceedings

were not void for want of jurisdiction of the person of the heirs. But the assertion of the bill was, that by means of the administratrix's sale, the Donlin heirs were divested of all their interest in the land, (except the naked legal title,) and that it became vested in the purchaser at such sale, through whom the complainants were claiming. The Donlin heirs were called upon to defend their right as against those proceedings, and they should have brought forward all the objections which there were to be urged against the validity of the sale.

Although there was a fatal objection of the want of jurisdiction, which was overlooked, and not at all considered, it could not be raised in another suit. The decree settled the question of the validity of the sale. Mr. Bigelow, in his work on Estoppel, in a note on page 46, thus states the doctrine: "It follows, also, from the authorities considered, that a valid judgment for the plaintiff sweeps away every defense that should have been raised against the action; and this, too, for the purposes of every subsequent suit, whether founded on the same or a different cause. Nor will equity relieve the defendant from a judgment on any ground of which he should have availed himself in the action at law." And see *Rogers* v. *Higgins et al.* 57 Ill. 244.

But it is insisted that, although such was the effect of the decree as to Hettinger and Oertel, the complainants in that suit, it is otherwise as to Kelly and Mergentheim—that there is not such a privity of estate between the latter and the former, as causes the decree to have the same conclusive effect in favor of Kelly and Mergentheim; that in order that the decree should have that effect, they must have acquired their interest subsequent to the decree, according to *Campbell* v. *Hall,* 16 N. Y. 575; and it is asserted that the interest of Kelly and Mergenthiem accrued to them by virtue of the trust deeds executed to Burgess and Strauss by Hettinger and Oertel, prior to the institution of the suit in the Superior Court by Hettinger and Oertel. But on the 19th day of

25—70TH ILL.

December, 1859, after the decree was rendered, Kelly and Mergentheim purchased the interest of Hettinger and Oertel from Strauss and Burgess in foreclosure of the trust deeds. In the case of *Adams* v. *Barnes,* 17 Mass. 365, in reference to the effect of such an estoppel as is claimed here, Mr. Justice JACKSON, in delivering the opinion of the court, said : "It is such an estoppel as runs with the land, and extends to all who are privies in estate to either of the parties to such judgment. A judgment which affects directly the estate and interest in the land, and binds the rights of the parties, is at least as effectual as a release or confirmation by one party to the other. Such an estoppel makes part of the title, and extends to all who claim under either of the parties to it." Prior to the foreclosure sales, Hettinger and Oertel were in reality the owners of whatever interest they ever had in the land, subject to a lien thereon in favor of Kelly and Mergentheim, for the payment of the indebtedness due them ; and when the latter purchased the land at the foreclosure sale, they purchased it with the benefit of the estoppel attached to it. Under our statute, where there is a conveyance purporting to convey an estate in fee simple in land, and the vendor is not possessed of the legal estate, or interest therein, but afterward becomes possessed of and confirmed in the legal estate, it inures to the use of the grantee, and the conveyance is rendered as valid as if the grantor had the legal estate at the time of the conveyance. We do not perceive why not also, under this statute, the benefit of this estoppel confirming Hettinger and Oertel in the legal estate to this land as against the Donlin heirs, should not be transferred to the prior grantees, Strauss and Burgess, and the effect be the same as if the deeds to them had been made subsequent to the decree.

We are of opinion that the decree has the same conclusive effect in favor of Kelly and Mergentheim, as privies in estate, that it has in favor of Hettinger and Oertel.

It is objected, against that decree, that the court had no jurisdiction of the person of Catharine Fitzgerald, now Crouse. Neither summons nor return appears in the record, nor does the court find that it had jurisdiction of her person. The bill was filed October 3d, one of the days of the October term, 1859. Her demurrer, by William B. Snowhook, her solicitor, as also her husband's, by the same solicitor, is filed October 13, 1859. It is insisted that under such circumstances, there could have been no jurisdiction—that neither she nor her husband could appoint an attorney for her, and that she could be brought into court only by the service of process. It appears, from the testimony of Mr. Snowhook, whom the complainants called as a witness on the hearing, that he was retained as counsel, in 1859, by the widow and heirs of Donlin, senior, to bring the action of ejectment against Hettinger and Oertel, for the possession of the premises; that he brought it in the month of August, 1859, as their attorney; that Catharine, then the wife of Fitzgerald, was cognizant of, and authorized the bringing of the suit in ejectment; that she was aware of the suit brought to enjoin the prosecution of that action; that she, with her husband, lived very near to the residence of the witness, and that he frequently talked with her about the suit. Her husband had the right to bring suit in ejectment in his name and her own to recover her lands; at that time, he had the right to the use after the lands were reduced into possession. The suit in chancery was but a mode of defense to the ejectment suit, adopted by Hettinger and Oertel. And in cases where the wife has a separate property, it is often stated that, in respect to this property, she may sue and be sued as a *feme sole.* Story's Eq. Pl. sec. 63.

The appearance here, by attorney, we consider as having been authorized both by the wife and husband; and such appearance to a suit already commenced against the wife and her husband, we can not say did not give the court jurisdiction of the person of the wife, even although the appearance

was before service of process was had upon her. There was an obvious reason here for the entry of such premature appearance, in order to remove, as speedily as possible, the bar of the injunction to the prosecution of the pending eject-ment suit.

There is an attempt made to impeach that decree, as hav-ing been obtained by fraud and collusion. But we do not find the allegations of the bill, in that regard, to be sustained by the proofs.

We find, then, that decree in the injunction suit in the Superior Court of Chicago to be a valid decree against the appellee, Catharine Crouse, in full force, and conclusive against her right.

Perceiving no error in the record, the decree must be affirmed.

*Decree affirmed.*