## KNAPP v. HOYT ET AL.

1. **Bankruptcy**: NEW PROMISE TO PAY DEBT: DISCHARGE. Where a bankrupt, after the adjudication of bankruptcy and before his discharge, makes an express new promise to pay an original debt, such promise will be binding upon him after his discharge.

2. ——: ——: EVIDENCE: DISCHARGE IN BANKRUPTCY. A bankrupt prior to his discharge said to a creditor that "if he got his discharge he would be in shape to pay, and would pay" a certain debt. *Held*, that this constituted an express promise to pay, and took the debt out of the discharge in bankruptcy.

3. ——: DEBT IN JUDGMENT: DISCHARGE: EQUITY. Where the debt is already in judgment, and the party needs only the removal of the apparent discharge of it arising from the bankruptcy proceedings, the relief is of equitable cognizance.

### *Appeal from Floyd Circuit Court.*

### TUESDAY, DECEMBER 20.

THE plaintiff alleges in his petition that in 1871 and 1872 he was engaged in business with Z. C. Trask *et al.*, forming the firm of Trask, McNitt & Knapp, and on September 10, 1872, defendant J. M. Dougan recovered a judgment against said firm and the plaintiff for $818.87; that on August 7, 1872, a petition was filed against the plaintiff as a bankrupt, and on the 28th day of April, 1875, plaintiff received a discharge in bankruptcy from all debts and claims which existed on August 7, 1872, whereby defendant's judgment became extinguished and plaintiff released from all liability thereon; yet said judgment remains unsatisfied and not released of record, and causes a cloud on plaintiff's title, and defendant claims that plaintiff is still held thereon. Plaintiff asks that said judgment may be decreed discharged and of no force against plaintiff or lien on his lands. The defendant Dougan answered, alleging that he had no knowledge or information sufficient to form a belief as to the truth of plaintiff's allegations, and by way of counter-claim stating that said judgment

was rendered September 9, 1872, and on the fifteenth day of May, 1875, and on divers other days and times since the filing of the petition to adjudge the plaintiff a bankrupt, under which his discharge was obtained, in consideration of defendant's said judgment and demand, plaintiff verbally promised defendant that he would pay said judgment in a reasonable time, and by reason of said promises and agreements the plaintiff waived the bar of his discharge as to said judgment of defendant. Defendant asks that said judgment debt be revived against plaintiff and confirmed as valid and binding. The court dismissed the defendant's cross petition, and decreed that defendant's judgment be released and discharged, and be of no force against plaintiff, or lien upon his property. The defendants appeal.

*Wilber & Sherwin*, for appellants.

*Goodykoontz, Blythe & Wheeler* and *P. W. Burr*, for appellee.

DAY, J.—The plaintiff introduced his discharge in bankruptcy in the usual form, dated April 28, 1875, and purporting to discharge him from all debts provable in bankruptcy previous to his being adjudged a bankrupt on a petition filed against him August 7, 1872. The defendant introduced the judgment docket of the Floyd Circuit Court showing the rendition of a judgment in favor of J. M. Dongan against Z. C. Trask, E. W. McNitt, and James C. Knapp, dated September 10, 1872, for $780.27, and costs and attorney's fees, upon which judgment $273.05 had been collected on execution. The testimony respecting the promise of plaintiff to pay this judgment is very brief, and is, substantially, as follows: J. M. Dongan testified: "I had a conversation with plaintiff about the 26th of April, 1875. We were talking about our business, when he said to me that he was going to Dubuque the next day and expected to get his discharge. That he couldn't do

anything at that time about fixing his matter with me—paying
me. We were talking about the Trask, McNitt & Knapp
judgment. He said if he got his discharge, which he expected
to, he would be in shape to pay it, and was going to pay me.
That he had enough to do it with. * * * In the forepart
of the month of May, and after obtaining his discharge, I was
* * talking with him about this same matter, and he said
he was going to pay that as soon as he got around to it. That
he expected to get around in a short time, and he would be in
shape to fix it up. Afterward, about the 7th of June, 1875, I
took Mr. Goodykoontz with me and went down expecting to
get it straightened up at that time. He claimed that he was
going to pay me, but didn't come to a conclusion that night.
The last was that he wanted to see Trask; that he thought
Trask should stand a share, and wanted to see what he could
do with him."

Mr. Goodykoontz testified: "About May 5th I was present
at a conversation between defendant Dougan and plaintiff, in
plaintiff's place of business, at Nora Springs. In that conver-
sation Dougan said to Knapp that he had come down to talk
with him in reference to his claim against Trask, McNitt &
Knapp; that the matter had been running some time, and he
desired to have it arranged some way. Knapp replied that he
was going to make the matter right, and didn't want to see
Dougan lose anything."

R. Wilber testified: "I called on plaintiff, at his place of
business, a few days before he was going to Dubuque. I asked
Knapp what he was going to do with Dougan. He said he
proposed to fix it up. I asked him to give security for the
claim. He said, 'no, I won't do that; I can't do it—you know
I can't before I get my discharge.' * * * * * I think
he said he couldn't get a discharge by giving that security,
but after he got his discharge he would fix Dougan's matter up."

The plaintiff, on his own behalf, testified as follows: " I
have never, since April 28, 1875, at any time or place, agreed

or promised to pay defendant, or any person for him, any part of the judgment in controversy. All the conversation I have had with him since April 28, 1875, was that he frequently asked me to fix the matter up, and I universally told him that when I got able I would do what was right in regard to a portion of it. I have no remembrance of any conversation with defendant in the presence of anyone since I returned from Dubuque, when I got my discharge."

I. The plaintiff concedes, at least by implication, that after a debtor has been fully discharged from his debts in a proceed-

1. BANK-
RUPTCY:
new promise
to pay debt:
discharge.

ing in bankruptcy, he may, by a new promise to pay the original debt, if clear, distinct, and unequivocal, become liable therefor in an action at law, on the new promise. It is claimed, however, that a promise made before final discharge is without consideration and void. The very decided weight of authority, however, holds that a promise made after the debtor has been adjudicated a bankrupt, but before he has obtained his certificate of discharge, is binding. This doctrine is sustained by the following authorities: *Brix v. Braham*, 1 Bing., 281; *Stilwell v. Coope*, 4 Denio, 225; *Corliss v. Shepherd*, 28 Maine, 550; *Otis v. Gazlin*, 31 Maine, 567; *Donnell v. Swaim*, 2 Penn. L. J., 393; *Fraley v. Kellcy*, 67 N. C., 78; *Hornthal v. McRae*, Id., 21. The contrary doctrine is held by the following authorities only, so far as we have been able to discover: *Ingersoll v. Rhodes*, Hill & Denio, Supp., 371; *Ogden v. Ridd*, 13 Bush., 581. The case of *Stibbin v. Sherman*, 5 Sandf., 510, although cited in Bump's Law of Bankruptcy as sustaining the opposite doctrine, does not, in fact, support it, as it did not appear in that case that the new promise was made after the debtor had been adjudicated a bankrupt. Whatever promise was made by the plaintiff, before obtaining his certificate of discharge, was made on the 26th day of April, 1875. The plaintiff obtained his discharge on the 28th day of April. Where debts have been proved and assets have come

to the hands of the assignee, the publication for discharge cannot be made until after the expiration of six months from the adjudication. If no debts have been proved, or no assets have come to the hands of the assignee, the application for a discharge may be made at any time after the expiration of sixty days from the adjudication of bankruptcy. The discharge of the plaintiff on the 28th of April is conclusive proof of the fact that he had been adjudicated a bankrupt before the 26th of that month. We are of the opinion that a promise upon the 26th of April, as well as after the obtaining of his final discharge, is binding upon the plaintiff if sufficiently established.

II. The appellee insists that the evidence does not establish a clear, distinct, and unequivocal promise to pay the debt, either before or after the discharge. On behalf of the defendants, Dougan testified that in the conversation on the 26th of April the plaintiff said: "That he couldn't do anything at that time about fixing his matter with me—paying me. He said if he got his discharge, which he expected to, he would be in shape to pay it, and was going to pay me. That he had enough to do it with." The plaintiff, although a witness upon the trial, does not deny that he promised to pay the debt before he received his certificate of discharge. In *Stilwell v. Coope*, 4 Denio, 225, the plaintiff proved a conversation between himself and the defendant, before the defendant obtained his discharge, in which he said that "the note should be settled." It was held that this was a promise to pay the note, and that it saved the debt from the operation of the discharge. In *Evans v. Carey*, 29 Ala., 99, the defendant said: "If plaintiff had anything on account of such indorsement, he (defendant) was able and willing to pay it to plaintiff." It was held that this amounted to an express promise to pay and took the debt out of the discharge in bankruptcy. See, also, *Bennett v. Everett*, 3 R. I., 152; *Haris v. Peck*, 1 R. I., 262. The plaintiff in this case said that if he

*2. ____: ____: evidence: discharge in bankruptcy.*

got his discharge " he would be in shape to pay, and was going to pay." This, we think, constitutes an express promise to pay. The court erred in decreeing that the defendant's judgment be released and discharged, and of no force and effect against plaintiff.

III. The defendant, by way of counter-claim, asked that his judgment debt be revived against the plaintiff and con-

*3. ———: judgment: discharge.* firmed as valid and binding, and that he recover said amount and have execution therefor. It is claimed that the counter-claim cannot be maintained, because the defendant's remedy is at law upon the original debt and the new promise combined, citing *Dusenberry v. Hoyt*, 53 N. Y., 521. The defendant's debt is, however, already in judgment, and all that the defendant needs is the removal of the apparent discharge of it, arising from the bankruptcy proceedings. This he can obtain by showing the new promise to pay the judgment, and the relief which he asks is of equitable cognizance. Upon the evidence introduced the defendant is entitled to a decree confirming the judgment as valid and binding against the plaintiff, and that execution may issue thereon.

REVERSED.