## LANAGIN V. NOWLAND.

1. BANKRUPTCY: *New promise to pay debt.*

   A promise by a bankrupt to pay a debt provable in bankruptcy, made after adjudication, is binding upon him, whether made before or after his discharge, and need not be in writing.

2. SAME: *Same: Statute of frauds.*

   A promise to pay a debt without specifying time of payment is a promise *in presenti*, and not void under the statute of frauds, as a promise "not to be performed within one year from the making thereof."

3. PRACTICE: *Special verdicts: Finding of facts.*

   In finding specially whether a defendant promised to pay a debt, the jury should not be required to find, and should not find the language used by the defendant, but only the fact whether the promise was made or not. The language is mere evidence of the fact, and if stated in their verdict should be disregarded. Whether the language imports a promise is a question of fact for the jury, and not of law for the court.

APPEAL from *Sebastian* Circuit Court.

Hon. R. B. RUTHERFORD, Circuit Judge.

*Clendenning & Sandels* for appellant.

The weight of authority and better reason are that a promise to pay after the adjudication but before the discharge in bankruptcy, will not revive the debt. *79 Kentucky, 532; 80 Ib., 241.*

The court erred in giving the instructions on its own motion. The first did not limit the time of the promise, and was otherwise objectionable. The court also erred in refusing the instructions asked by defendant. *18 Wal., 1; 85 N. C., 151; 71 Ind., 288; 90 Ill., 82.*

The language used amounts at most to the mere expression of an intention to do that which morally he was bound to do. The expression of an intention is not suffi-

Lanagin v. Nowland.

cient. *71 Ind., 288; 90 Ill., 82; 136 Mass., Elwell v. Cam-mer, 18 Wal., 1; 27 Ark., 619.*

*Collins & Balch* for appellee.

1. A promise made after adjudication and before discharge to pay a debt due by a bankrupt is binding. *57 Iowa, 591; 42 Am. Rep., 59.*

2. To determine whether there was a promise to pay, we must look to not only what was said, but to all other surroundings as suggested by the *res gestæ*, and whether the bankrupt meant to bind himself, is a question for the jury. *86 N. C., 331; 40 Am. Rep., 461; 7 Pick. Man. Rep., 462.*

Sections 4678–9 do not authorize the second question propounded to the jury, and their answer should be treated as surplusage. They should not have been required to give the *language*, but only to find the *fact* whether or not the new promise was given.

A new promise, in case of a discharge in bankruptcy, need not be in writing, nor to be performed within a given time. *Apperson v. Stewart, 27 Ark.; McWillie v. Kirkpatrick, 6 C. (Miss.), 802.*

EAKIN, J. Appellee sued Lanagin on a promissory note for thirty-two hundred and seventy-one 80-100 dollars, dated August 1, 1872, and due at six months; with divers credits indorsed, which, with the note, are set forth.

The complaint further shows that in March, 1878, defendant Lanagin was adjudged a bankrupt, and afterwards promised plaintiff to pay the debt. The defendant denied the promise.

There was a trial by jury upon the issue, who found for the plaintiff in the sum of $3,794.86, upon which judgment was rendered. After motion for a new trial overruled, and a bill of exceptions taken, the defendant appealed.

The objections to the verdict concern evidence and in-structions. The evidence was substantially this, that Lan-agin had borrowed the money from plaintiff. Before filing his petition in bankruptcy, he told her he might be forced to do so, but that it would not affect her debt, as he in-tended to pay it. She relied upon that, and did not prove her debt in bankruptcy. After he had been adjudicated a bankrupt, and before his discharge, she sent for him and had another conversation in which he said, "You remem-ber what I told you before my bankruptcy. You need have no uneasiness. I intend to pay your debt. I have always intended to pay your debt." After his discharge she called upon him, in company with her sister, and asked him to pay her something. He answered that he could not. That she need give herself no uneasiness about it; that he intended to pay her debt. Afterwards he furnished her with some lumber at her request, which she placed as a credit on the note. Nothing was said about giving it to her. She is corroborated, as to the conversation with de-fendant, by her sister, who testified that defendant ex-pressed regret that he could do nothing then, but told plaintiff not to be uneasy, he intended to pay it.

Defendant's statement in evidence is that he told plain-tiff before petitioning that although he would be discharged from legal obligations by bankruptcy, he would always feel a moral obligation to pay when able to do so. Remembers no conversation with her after the adjudication and before discharge. Remembers that one, after the discharge, when she and her sister were together. He says he confessed to her that he still felt the moral obligation to pay, but de-nies making a promise to do so. Says he did not let her have the lumber on the note, but told her she must pay for hauling it. The plaintiff and her sister, being recalled, denied that he said anything about moral obligations.

The discharge in bankruptcy was filed with the answer and put in evidence. It recites that defendant had been adjudged a bankrupt, and discharges him from all debts which were provable, and which existed on the sixteenth of March, 1878, the date of his petition, with the proper legal exceptions.

With the general verdict, the jury being thereto required by the court, found specially, as to particular matters of fact stated in writing, that defendant, after his adjudication in bankruptcy, made to her a distinct, direct and unequivocal promise to pay this debt, in this language: "You need give yourself no uneasiness, I intend to pay the debt," or words to that effect. Further finding that defendant did, at his residence, say more, in the way of making such promise, than that he intended to pay plaintiff.

The court had instructed the jury against objections of defendant, that they should find for the plaintiff, if they were satisfied the evidence preponderated to show that defendant, after he was adjudged a bankrupt, made a clear, distinct and unequivocal promise to pay the note; and also instructed that the expression of an intention to pay was not sufficient. Nor would the payment of interest be so, nor of part of the principal. Nothing would suffice but a clear and distinct promise.

The court refused to charge them, for defendant, that the promise must be made after discharge; or that no action could be brought upon any contract not to be performed in one year from the making thereof, which might not be evidenced by writing; or that there must be a clear and distinct promise to pay the debt, either at a day certain or on the happening of a certain contingency set up in the pleadings; or that the discharge in bankruptcy was a complete discharge of this debt finally and forever.

Lanagin v. Nowland.

**1. BANK-RUPTCY:**
**New promise to pay debt.**
The principal argument made for appellant is that a promise to pay a debt provable in bankruptcy, made after adjudication, does not operate to continue it, if made before the discharge. It is difficult to apprehend the reason of such a rule under the bankrupt system. The discharge has relation to the time of filing the petition, and touches no subsequent liability. After adjudication the bankrupt cannot be sued. Therefore a new promise would remain in force, and if sustained by good moral obligation should continue binding notwithstanding its precedence in time of the discharge. It seems there is some conflict of authority on this point. The doctrine as above stated is announced in the case of *Knapp v. Hoyt, 57 Iowa, 591,* which cites the cases relied on. It is supported by the greater weight of authority as well as by the better reason. See notes to same case in *42 Am. Rep., p. 59.*

**2. SAME:**
**Statute of frauds.**
The statute of frauds has no application to the case. The legal obligation to pay, if assumed at all, was immediate. It was not a promise " not to be performed within one year from the making thereof." The provision against a verbal promise renewing a debt, contained in the statute of limitations, does not apply to bankruptcy. The instructions were carefully framed, well guarded, and as rigidly in favor of the defendant as the law required.

**3. SPECIAL VERDICTS:**
**Finding facts.**
The real difficulty in the case arises from the special verdict, and what seems to have been with the court and attorneys, a misconception of the duty of the jury in returning special verdicts. They were required to give the language of the defendant in making the promise. The law does not authorize that. There was no contest as to the exact words used. The question was one of intention and of the effect of the conference. The *fact* was the *promise,* and they might have been required to find specially as to that, together with the general verdict. A special

verdict "must present the facts, as established *by* the evidence, and *not* the evidence to prove them." (*Gantt's Digest, sec. 4678.*) Language is evidentiary. So much of the special verdict as sets it forth is to be disregarded. It was not for the Circuit Judge, nor is it for us to determine, as a question of law, whether the language was a promise or not. The question is, does the evidence altogether support the verdict as to the special fact of the promise? To determine that was the province of the jury. (*Shaw r. Burney, 86 N. C., 331.*) The case of *Allen v. Ferguson, 18 Wall., p. 1,* arose on demurrer, and involved the construction of language in a letter, which contained no expression of intention to pay the particular debt.

If there was in this case any promise about it, it depended on no contingency of time, circumstance, or future ability. It was an absolute promise, or none at all. The jury were advised that a mere expression of intention would not support a promise. Upon the other hand it will not be seriously contended that the word "promise" should be used, or that there is any other word technical or otherwise that is necessary. It is not easy to define the difference between a promise and an expression of intention. Perhaps it lies in this, that the latter is merely an evidence of the condition of the mind with regard to future action, which concerns only the individual entertaining it, and which no one has the right to require him to execute, while the former is intended to give some third person an assurance which they will be expected to rely on, that the act will actually be done, or refrained from. One of Mr. Webster's definitions of a promise is, " a declaration which gives to the person to whom it is made a right to expect, or to claim the performance of the act." Such a declaration of an intent to fulfill a moral obligation, addressed to one entitled to receive it, and expected

or induced to rely upon it, might be quite as potent to convert a moral obligation into a legal one, as to say positively, "I will." To say that it would not, would be to destroy all distinctions in substance, and make rights depend on forms of speech.

Under all the circumstances, the nature of the debt, the previous conversations, and the urgency of the plaintiff's pressure, the jury might well have believed that the defendant, by the language used, meant to inspire her with confidence that the debt would be paid, and to relieve her anxiety by inducing her to rely upon it. This would be a promise, upon which the law would attach the obligation, whether the defendant was aware that he incurred it or not. If he had not meant to give the plaintiff a reasonable right to suppose that he was binding himself, he might easily have been more open and clear, and said in more intelligible fashion, than by reproaching her for a doubt, that whilst he would not incur a legal obligation, he was disposed, and intended when able, to restore her money voluntarily. We think the jury justified by the evidence in finding the promise, and that there was no reversible error in refusing the motion for a new trial.

Affirm.