## WELLS *et al.* v. EDMISON.

1. DISCHARGE IN BANKRUPTCY—WHEN NOT A BAR TO ACTION ON FORMER JUDGMENT.

Plaintiff instituted an action against defendant in a circuit court of Iowa.

Defendant filed a petition in bankruptcy in the United States court, but made no application for a stay of proceedings in the action in the state court, and judgment by default was entered against him.

*Held*, that the discharge of defendant in bankruptcy constituted no defense to an action on the judgment brought by plaintiff in this territory, and that plaintiff was entitled to recover.

(Filed February 16, 1885.)

Appeal from the district court of Minnehaha county.

*Winsor & Sweezey,* for appellants.

*Bartlett Tripp,* for respondent.

PALMER, J. The pleadings and findings in this record show that on the twenty-eighth day of August, 1878, the plaintiffs, as copartners under the name of M. D. Wells & Co., commenced an action upon an account for goods sold and delivered, against the defendant, by personal service of process, in the circuit court for Buchanan county, in the State of Iowa, which was a court of general jurisdiction. The defendant made no appearance or answer, and at the October term of 1878, on the twenty-ninth day of October, judgment was rendered against him for $577.50, and costs. After the commencement of that action, and on the thirty-first day of August, 1878, the defendant filed his petition in bankruptcy in the United States district court for the Southern district of Iowa, and such proceedings were had therein that in April, 1880, he obtained a discharge in the usual form. This action was brought upon the judgment, and the only defense interposed by the defendant is the discharge in bankruptcy. The trial court held, for the purposes of this case, that the demand in judgment was discharged, and that the plaintiffs could not recover. Judgment dismissing the action, and for costs, was entered against the plaintiffs, from which the appeal is taken.

The sole question presented upon this appeal is whether a discharge granted under the late bankrupt law impairs, or at

all affects, a judgment recovered in a court of competent juris-
diction, subsequently to the filing of the petition in bankruptcy,
which by the statute is "deemed to be the commencement of
proceedings in bankruptcy." Rev. St. U. S. § 4991. While
there is some conflict in the cases, especially in regard to the
doctrine of merger involved in the question, we are convinced,
by the recent authorities cited, and the principles established
by the courts of this country as to conclusive effect of a final
judgment, that the defense here interposed should not prevail.
In Bradford v. Rice, 102 Mass. 472, the action was like the case
at bar, upon a judgment recovered in another state, pending
proceedings in bankruptcy; and it was ruled that the certificate
of discharge was no defense to the action. GRAY, J., gives
the opinion, the first paragraph of which contains the substance
of the decision:

"The ruling of the court below was in accordance with a
series of decisions of this court, by which it has been held that
if, after the institution of proceedings in insolvency or bank-
ruptcy, judgment is rendered upon a debt provable under those
proceedings, the original debt is merged, and extinguished in
the judgment, and the judgment is not provable against the
estate of the debtor, nor discharged by the certificate; and this
not merely because such a merger takes effect by the rules of
the common law, but because the creditor, by taking judgment,
and so changing the form of his debt, and securing to himself
the benfit of conclusive and permanent evidence of it, and an
extension of the period of limitation of an action thereon, is
held, on his part, to have elected to look to the debtor person-
ally, and to abandon the right to prove against his estate; and
the debtor, on the other hand, who might have protected him-
self by moving the court in which the action was pending for a
continuance, in order to afford him an opportunity to obtain
and plead a certificate of discharge, is held, by omitting to
make such a motion before judgement, to have waived the right
to set up his certificate against the plaintiff's claim; and there-
fore the rights of both parties must be governed by the judg-

ment which the one has moved for, and the other has suffered to be rendered."

This decision is followed and approved in later cases in the same court. Cutter v. Evans, 115 Mass. 27; Ray v. Wright, 119 Mass. 426. In Boynton v. Ball, 105 Ill. 627, the same conclusion was reached in the circuit, appellate, and supreme court upon the question here involved. The supreme court reviews the question upon both the grounds stated in the Massachusetts case, and, while recognizing the conflict which has existed in the courts concerning the doctrine of merger by judgment, says on this point: "We are satisfied the better doctrine, and that, too, established by the later decisions, is that a judgment rendered after an adjudication in bankruptcy creates a debt which cannot be proved against the bankrupt's estate; that the indebtedness existing prior to the recovery becomes merged in the judgment." Then, referring to the other ground of decision in the Massachusetts case, the court says: "The circuit court did not lose jurisdiction of the case because Boynton was adjudged a bankrupt; but, as was held in Eyster v. Gaff, 91 U. S. 521, it was the duty of the court to proceed with the cause until, by some pleadings, the court was informed of the changed relations of the parties. See, also, Holden v Sherwood, 84 Ill. 92. The circuit court could do nothing less than proceed with the case to final judgment; and as the judgment is to be regarded as the joint act of Boynton, who, of his own choice, allowed it to be rendered, and of the plaintiff, upon whose motion it was rendered, the rights of these two parties must be regarded as finally settled by that judgment. We are not aware of any case that holds that where a defense might have been made to a pending cause of action, but was not set up, solely through the negligence of a defendant, such defendant may afterwards interpose the same defense to the judgment which has been rendered against him. It is ordinarily enough that a party has had a day in court and an opportunity to plead his defense. The bankrupt act in clear terms provides for the stay of an action which may be instituted against the bankrupt until his discharge is passed upon. This statutory provision

was incorporated into the law for the purpose of enabling a defendant, situated as was appellant, to plead his discharge in bar of the action; but as appellant gave no heed whatever to the law, and through his own negligence allowed a judgment to be rendered against him, what reason can be urged for holding that the judgment shall not be binding upon him? None is perceived." The same question has recently been decided in Bowen v. Eichel, 91 Ind. 22, in harmony with the decisions above cited; and this decision is based mainly upon the proposition that if a defendant fails to interpose a stay of proceedings, upon the intervention of bankruptcy, he must abide the consequences of the judgment.

These decisions are sustained by numerous authorities in like cases. *In re* Williams, 2 N. B. R. 80, by Judge SHIPMAN; *In re* Gallison, 5 N. B. R. 353, by Judge LOWELL; *In re* Mansfield, 6 N. B. R. 388; Hollister v. Abbott, 31 N. H. 442; Holbrook v. Foss, 27 Me. 441; Pike v. McDonald, 32 Me. 418; Sampson v. Clark, 2 Cush. 173; Faxton v. Baxter, 11 Cush. 35; Cutter v. Evans, 115 Mass. *supra;* Steadman v. Lee, 61 Ga. 58; Revere Copper Co. v. Dimick, 90 N. Y. 33. The cases cited *contra* appear to have been decided upon a limited and exceptional view of the doctrine of merger.

But, independently of this doctrine of merger, we are clearly of the opinion that the defense here interposed cannot prevail without violating another principle, that the judgment is final and conclusive as to every matter of defense existing at the time. That the act of 1867 provides an ample remedy whereby the suit in the Iowa court might, upon the application of the defendant, have been stayed to await the determination of the court in bankruptcy on the question of the discharge, and judgment therein prevented, is no longer an open question. Rev. St. U. S. § 5106; Hill v. Harding, 107 U. S. 631; S. C. 2 Sup. Ct. Rep. 404; Ray v. Wright, 119 Mass. 426; Page v. Cole, 123 Mass. 93. But no such application having been made, that court retained complete jurisdiction, and could properly proceed to judgment. Doe v. Childress, 21 Wall. 642; Eyster v.

Gaff, 91 U. S. 521; Holden v. Sherwood, 84 Ill. 92; Amador C.
& M. Co. v. Michell, 59 Cal. 168; Cutter v. Evans, 115 Mass.
27; Ray v. Wright, 119 Mass. *supra*; Hill v. Harding, 107 U. S.
*supra.*

These cases show the remedy of the statute is in the nature
of a personal privilege on the part of the bankrupt.  It is said
by Justice GRAY, in the last case cited, as he had before de-
clared, when chief justice of the Massachusetts court, (Ray v.
Wright, 119 Mass. 428,) that if neither the bankrupt nor his
assignee in bankruptcy applies for a stay of proceedings, the
court may *of course* proceed to judgment.  And the extent of
this statutory remedy is to afford a complete defense in the
action.  The stay of proceedings is to await the determination
of the court in bankruptcy "on the question" of the discharge,
"evidently for the purpose of enabling the bankrupt to obtain
his discharge, and plead it in bar of the action."  It is so held
in the Indiana, Illinois, and Massachusetts cases, and assumed,
or conceded to be so, in the other cases cited.  In Ray v.
Wright, *supra*, the court plainly says that one of the objects of
this provision is "to protect the bankrupt, in case he obtain his
certificate, from having his original cause of action against
him merged in a judgment."  And the same principle is de-
clared by the court of appeals in Revere Copper Co. v. Dimock,
90 N. Y. 37, where the discharge was obtained after default,
and five days before the entry of judgment.  The court there
says:  "The defendant was not without a remedy.  He could
have applied to the Massachusetts court to open his default
and permit him to set up his discharge."

This remedy of the statute, therefore, being in the nature
of a personal privilege, and the defendant having waived it as
he did, how can he now avoid the legal consequences of the ob-
ligation created by the judgment of the court?  This obligation
no longer rests upon contract or consent, for "*judicium rednitur
in invitum.*"  A judgment is essentially different from a contract
in its nature and elements, and is deemed in law an "obliga-
tion of record."  2 Amer. Lead. Cas. 819, 820; O'Brien v.
Young, 95 N. Y. 428, and cases cited; State v. City of St. New

Orleans, 109 U. S. 285; S. C. 3 Sup. Ct. Rep. 211. From the time the supreme court, in Mills v. Duryee, 7 Cranch, 481, (1813,) decided that *nil debit* is not a good plea to an action upon a judgment of another state, it has been uniformly held that a party, bound by such an obligation, is estopped from alleging or proving that at the time he did not owe the debt. Christmas v. Russell, 5 Wall. 290; Cromwell v. County of Sac, 94 U. S. 351; Revere Copper Co. v. Dimock, *supra*; Jordan v. Phelps, 3 Cush. 545; Fuller v. Shattuck, 13 Gray, 70; Stevens v. Howe, 127 Mass. 164; Patrick v. Shaffer, 94 N. Y. 423. And, within the general principle of *res adjudicata*, it is well established that the judgment of a court of competent jurisdiction is final and conclusive, not only as to any matter of defense actually determined, but as to every other defense or remedy to defeat or diminish the recovery, which might have been interposed, but was omitted or otherwise waived. Jordan v. Van Epps, 85 N. Y. 427, and cases cited; Wells, Res. Adj. § 251, 67; Marriott v. Hampton, 7 Term R. 269; Le Guen v. Gouverneur, 1 Johns. Cas. 492; Walker v. Ames, 2 Cow. 428; Binck v. Wood, 43 Barb. 320; Clemens v. Clemens, 37 N. Y. 74; Noble v. Merrill, 48 Me. 140; Bridge Co. v. Sargent, 27 Ohio St. 233; Bates v. Spooner, 45 Ind. 493; Kelly v. Donlin, 70 Ill. 378; Dewey v. Peck, 33 Iowa, 242; Bank v. Stevens, 46 Iowa, 429; Mally v. Mally, 52 Iowa, 654; Parnell v. Hahn. 61 Cal. 131.

In Jordan v. Van Epps, *supra*, the plaintiff sought to recover dower in certain lands. In a former partition suit she had neglected to assert her statutory remedy for the admeasurement of dower, and it was held that the judgment was conclusive of the matter omitted in her defense. The court there states the rule: "The judgment is final and conclusive between the parties, not only as to the matter actually determined, but as to every other matter which the parties might have litigated and have decided as incident to or essentially connected with the subject-matter of the litigation, within the purview of the original action." And in the Sac County Case, 94 U. S. 352, it is said that, where the former judgment was upon the same claim or demand in any subsequent action, "it is a finality as to the

claim or demand in controversy, concluding parties not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. " Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defenses actually existed, of which no proof was offered; such as forgery, want of consideration, or payment. If such de- fenses were not presented in the action and established by competent evidence, the subsequent allegation of their exist- ence is of no legal consequence. The judgment is as conclu- sive, so far as future proceedings at law are concerned, as though the defenses never existed.

We conclude, therefore, that the discharge of the defend- ant, which might, by obtaining a stay of proceedings, have been pleaded in bar of the former action, is no defense to an action on the judgment, and that the plaintiffs are entitled to recover.

Judgment reversed.

SMITH, J., concurring. I concur in the conclusions, but not upon the ground that the judgment is a merger of the debt. That I regard as a mere fiction. The judgment no more merges or extinguishes the debt than does a promissory note merge the debt when given on settlement of an account, or on settle- ment of an unliquidated or disputed claim of any kind. But I concur solely on the ground that the defendant has had his day in court, and, failing there to interpose the bar to the action, and permitting judgment to go against him, he cannot now, when sued upon the judgment, interpose a defense which he might have interposed to the original action.

CHURCH, J., dissenting. The single question presented by this appeal is this: Is a discharge in bankruptcy un- der the act of 1867, properly pleaded and proved, a bar to an action brought in a district court of this territory, upon a judg- ment recovered in a circuit court of Iowa, after the filing of the petition in bankruptcy, and prior to the granting of the dis-

charge, in an action commenced by personal service of process before the filing of the petition, upon an indebtedness on simple contract then existing? That the question thus presented is one of considerable difficulty is manifest in the diversity of opinion concerning it which has prevailed among the many distinguished jurists by whom it has, in various forms, been considered. I am not aware that it has ever been directly passed upon by the supreme court of the United States; and this court is therefore at liberty to adopt such a solution of the question as shall seem to it most in consonance with the spirit and purpose of the acts of congress whose shield is thus invoked. And I think it must be conceded in the outset that that spirit and that purpose were highly remedial and beneficent. While, on the one hand, accepting from the debtor the surrender of all his estate, and devoting it to the payment, so far as it would extend, of the first claims and demands of all his creditors who might choose to claim their *pro rata* share, the law designed to relieve the honest debtor from a burden which he was unable to carry, gave him a new start in life, and thus tended, at least, to make of him a more useful citizen, better able to add to the productive wealth of the country, and to bear his due share of the public burdens. Thus considered, the operation of the law was beneficial to three classes,—to the debtor, to his creditors, and to the public at large.

One of the elements essential to this beneficent operation was the protection guaranteed by the discharge against all enumerated debts and claims existing at the time of filing the petition, and provable against the estate of the bankrupt, and it certainly was never intended or contemplated that any creditor of the class designated should, by any mere failure or refusal to avail himself of the provisions of the act, or to share in the distribution of the estate, or by any act or device of his own, obtain any undue advantage over the debtor, his fellow-creditors, or the public, and defeat the wise and salutary purposes of the law. Yet, if the discharge here pleaded and proved is not a bar to the present action, this is precisely what will be accomplished by this creditor. If he is to succeed in

his attempt, it must be because we are compelled by some inflexible rule of law, to say that because he elected to refuse to share in the bankrupt's estate, and, in spite of the prohibition of the act, (Section 5106,) to prosecute his claim to judgment, against that judgment the shield of the bankrupt law is no defense. That such is the law is now declared by this court, and this declaration is undoubtedly supported by an array of authorities which must command the highest respect.

The reasons assigned for this conclusion may be summarized as follows: The debts from which the bankrupt is released by his discharge are those which were, or might have been, proved against his estate. The debts made provable are those belonging to certain designated classes, which existed on the day on which the petition was filed. By operation of law, the original debt became wholly merged and extinguished in the judgment, which thereby became the debt,—a new debt; and this judgment not having been in existence on the day when the petition was filed, was, manifestly, not provable against the bankrupt's estate, and therefore not affected by the discharge. It is further urged that this judgment imports absolute verity, and is conclusive of the defendant's indebtedness at the time, in the amount thereof, and that he had then no defense to the action.

Among the authorities cited in support of these propositions are Bowen v. Eichel, 91 Ind. 22; Boynton v. Ball, 105 Ill. 627; Bradford v. Rice, 102 Mass. 472; the opinion in the latter case being delivered by Chief Justice GRAY, now a member of the United States supreme court. Evidently the controlling principle in these cases is that the debt is wholly merged and extinguished in the judgment, which thus becomes a new debt, and therefore was not provable against the estate. This particular branch of the question came before the United States district courts for adjudication in the early history of the bankrupt law, and met with various determinations; Judge SHIPMAN holding that such judgments were not provable. (*Re* Williams, 2 N. B. R. 79,) while Judges BLATCHFORD, WITHEY, LONGYEAR and HILLYER maintained the contrary views, (*Re*

Brown, 3 N. B. R. 145; *Re* Vickery, Id. 171; *Re* Crawford, Id.; *Re* Stevens, 4 N. B. R. 122; *Re* Stansfield, 4 Sawy. 334;) and the court of common pleas of New York (BRADY, J.,) in the case of World Co. v. Brooks, 3 N. B. R. 146, where, in a similar case, proceedings supplementary to the execution were taken against the bankrupt judgment debtor, vacated such proceedings on the application of the defendant.

Upon the main question the courts of New York have almost or quite uniformly held that such judgments were released by the discharge. I cite but a few of the cases from that state. Dresser v. Brooks, 3 Barb. 429; Arnold v. Oliver, 64 How. Pr. 452; Fox v. Woodruff, 9 Barb. 498; Johnson v. Fitzhuh, 3 Barb. Ch. 372; Clark v. Rowling, 3 N. Y. 216; Monroe v. Upton, 50 N. Y. 593. Of these I shall only quote a few words from the opinion of GRIDLEY, J., in Dresser v. Brooks, *supra*, who says: "A sound construction of the provision in the bankrupt act declaring the effect of a discharge, when duly granted, requires us to hold the certificate to be a bar to a debt extinguishing when the petition was filed, notwithstanding such debt has passed into a judgment. It was provable under the act, and the plaintiff was entitled to receive upon it his dividend of the bankrupt's estate. It was therefore precisely such a debt as the policy and spirit of the act intended should be discharged." To hold that, because the debt had passed into the new form of a judgment, it was therefore exempt from the operation of the discharge, he says, "might, in some cases, utterly defeat the benign objects of the act, and leave the unfortunate debtor subject to a great portion of his debts after every dollar of his estate had been faithfully devoted to their payment."

The courts of England, under their bankrupt acts, have almost uniformly held that the discharge operated upon judgments recovered pending the proceedings in bankruptcy, and Judge GRIDLEY clearly shows that these decisions have their foundation in the doctrine is that the original debt is not extinguished in the judgment, but that the judgment is a higher security therefor. See Drake v. Mitchell, 3 East, 258, and the important case of Executors of Froud v. Foote, Cowp. 138,

per Mansfield, Willes and Ashurst, JJ. So, also, Imley v. Carpentier, 14 Cal. 173; Harrington v. McNaughton, 20 Vt. 293; Smith v. Kinney, 6 Neb. 447; Rogers v. Insurance Co. (La.) 2 U. S. Dig. (1st. series) p. 626, § 414; Wade v. Clark, 52 Iowa, 158; S. C. 2 N. W. Rep. 1039; Knapp v. Hoyt, 57 Iowa, 591; S. C. 10 N. W. Rep. 925.

I have not overlooked the case of Revere Copper Co. v. Dimock, 90 N. Y. 33, supposed by counsel for appellants to sustain the opposite views, but I find nothing in that case inconsistent with the earlier cases cited. On the contrary, the court expressly places its decision upon the ground that the judgment was recovered five days after the discharge was granted, and therefore held that in an action upon that judgment it was not open to this collateral attack. It is difficult to see how they could have held otherwise. Nor have I omitted to notice that the earlier New York decisions were upon the bankrupt act of 1841, which contained no such specific provision as the act of 1867, authorizing the court, upon proper application, to stay proceedings in the pending action to await the result of the proceedings in bankruptcy. The answer to this is twofold: First. It would seem that, notwithstanding such omission in the act of 1841, the same protection was in fact afforded by the courts to the debtor under that act. 4 Wait, Pr. 579; 2 Barb. Ch. Pr. 169, 179, 589, note 11, 626; Re Bellows, 3 Story, 428; Dresser v. Brooks, 3 Barb. 433, (opinion of Allan, J.) Second. The mere existence or non-existence of such a provision, either by express enactment or by acknowledged practice, could not affect the legal character or effect of a judgment.

If the New York courts were right in their decisions, it must be because these judgments did not possess the character now sought to be attributed to them. Right here, then, I think, we must seek the solution of the question before us, for this is the point around which the inquiry revolves. Is a debt upon which a judgment is recovered not only merged, but also extinguished, in that judgment? That it is merged, in a certain sense, I freely concede. That it is extinguished, I must ven-

ture to deny, notwithstanding the eminence of those who have held the contrary view. One of these, for whose opinions I entertain the highest respect, (BEASLEY, C. J., of the supreme court of the state of New Jersey) puts the opposing view as strongly as possible when he says: "The effect of a judgment at common law is practically to destroy, so long as it exists, the ground in which it rests." (Barnes v. Gibbs, 31 N. J. Law 317,) an assertion which immediately suggests the inquiry, if the ground upon which it rests is destroyed, on what shall it then thereafter rest? Certainly, as already intimated, the English courts have taken an entirely different view of this matter.

In Drake v. Mitchell, *supra*, Lord ELLENBOROUGH, C. J., says: "I have always understood the principle of *transit in rem judicatum* to relate only to the particular cause of action in which the judgment is recovered, operating as a change of remedy, from its being of a higher nature than before; but a judgment recovered in any form of action is still but a security for the original cause of action until it be made productive in satisfaction to the party, and therefore, till then, it cannot operate to change any other collateral, concurrent remedy which the party may have." GROSS, LAWRENCE and LE BLANC, JJ., all express similar views. See, also, Bank of Metropolis v. Guttschlick, 14 Pet. 19, at 32.

The real difficulty, I apprehend, arises from confounding the debt proper with that by which it is evidenced. The debt is the obligation which the debtor owes to his creditor. If what he owes is money, then the debt is the obligation to pay that amount of money. This debt may be an open one, or it may be represented; that is, its character and amount may be preserved by the account of the merchant, or by a due-bill or a promissory note, or by a judgment. It may pass from the first of these through the series to the last, changing its form with each, gaining with each change higher character evidentially, but remaining the same debt or obligation throughout, until, by a judgment regularly obtained, its existence and amount are conclusively established. Why? Because it had

been adjudicated by a legal tribunal, constituted for that purpose, that at the time the judgment was rendered the debtor owed that obligation—the obligation to pay that amount of money—to his creditor; and while the judgment always thus speaks as of the date of its rendition, in the great majority of cases it also speaks as of the date when the action was commenced.  Undoubtedly this debt has now changed its form; but even though it be conceded that the original cause of action has become merged, swallowed up in the judgment, so that, as held in Barnes v. Gibbs, *supra*, it can never again be the subject of another action between the identical parties, the reason which lies at the foundation of this rule, I apprehend, is that the indebtedness having been once conclusively established by the adjudication of a competent tribunal, the law will not permit its existence or amount to be again controverted.  The judgment embraces within its scope all questions which were or ought to have been litigated between the parties in that action, and it is this circumstance which often gives to judgments great evidential value in collateral proceedings, whereas, if they were to be regarded as entirely new debts, the precedent obligation being entirely extinguished and destroyed by them, it is difficult to see how they could be evidence of any fact except of an indebtedness existing on the date of their rendition.

Mr. Bump, in his work on bankruptcy, (6th Ed.) 411, says "The debt remains.  If this were not so, the judgment would destroy itself by extinguishing the very foundation upon which it is built.  The debt was founded upon contract; it is now founded upon judgment, but it is none the less the same debt. A judgment operates to extinguish a debt only when it produces the fruits of a judgment.  It operates as a change of remedy merely.  It is a security of a higher nature.  It is still but a security for the original cause of action.  The theory that the debt is so merged in the judgment as to be extinguished has no applicability under the bankrupt act."  The doctrine of this author, above quoted, is, I think, fully sustained by the authorities already cited.

Another author states the doctrine thus:  "It has been uni-

formly held that whenever a cause of action, existing at the
time of filing the debtor's petition, was of such a nature that
the discharge would have affected it, any judgment recovered
thereon prior to the decree of discharge will be affected to an
equal extent; and that within the meaning of those laws such
judgments are never to be regarded as new debts, arising sub-
sequently to the filing of the petition." Freem. Judgm. § 245.

A recent case in the supreme court of the United States
strongly tends, in my opinion, to sustain this doctrine, A na-
tional bank having become insolvent, passed into the hands of
the comptroller for liquidation. Certain claims against it being
disputed, suits were brought and judgments recovered, where-
upon the question arose whether the judgment creditors were
entitled to dividends on the basis of the amount of their judg-
ments, or on the basis of the amount of the claims as they ex-
isted at the date of suspension; the difference, which was quite
large, being the interest which had accrued in the mean time.
The supreme court held that the judgment established the
claim as a claim against the bank at the time of the insolvency,
and the amount due when the judgment was rendered, and that
dividends were to be paid on the amount due at the date of in-
solvency. White v. Knox, 111 U. S. 784; S. C. 4 Sup. Ct. Rep.
686. See, also, Norton v. Switzer, 93 U. S. 355.

But again it is urged that, inasmuch as the bankrupt law
provided a method by which the debtor might have prevented
the recovery of the judgment, and he failed to avail himself of
its protection, he cannot now be heard to allege anything
against the judgment. His mouth is closed. Rev. St. § 5106.

The supreme court of Illinois in Boynton v. Ball, *supra*,
put the case thus: "We are not aware of any case that holds
that where a defense might have been made to a pending cause
of action, but was not set up solely through the negligence of a
defendant, such defendant may afterwards interpose the same
defense to the judgment which has been rendered against him.
It is ordinarily enough that a party has had a day in court and an
opportunity to plead his defense." The answer to this is that
the protection afforded by the statute is not in the form of, and

does not constitute a defense to, the action at all. On the contrary, it is largely founded on the hypothesis that the debtor has no defense, since, if the claim of the creditor is disputed, the statute provides for allowing the action to "proceed to judgment for the purpose of ascertaining the amount due, which amount may be proved in bankruptcy, but execution shall be stayed." It will be observed that here is no provision for any special form of judgment. The action proceeds to judgment by leave of the court in the ordinary way; the amount ascertained to be due is provable, and the execution is stayed to await the determination of the court as to his discharge. Now, can it be seriously contended.that if a bankrupt, against whom an action is pending, goes before the court, asks for a stay of proceedings, insists that he is not indebted to the amount claimed, and then, as it may be, consents that the action proceed to judgment for the purpose of ascertaining the amount due, the indebtedness will not be merged and extinguished in the judgment which may be recovered, but will be provable against the estate and released by the discharge, while, if the same bankrupt, acknowledging the indebtedness as claimed, permits judgment to be recovered against him without the formalities indicated, the indebtedness would, by.operation of law, be wholly merged and extinguished in such judgment, would not be provable, and would not be released by the discharge.

What is the real design of the provisions of Section 5106? Is it to impose upon the debtor certain conditions, on the observance or non-observance of which shall depend the question whether the debt sued for shall or shall not be released by the discharge which may be granted him? Or is it designed to protect the debtor, his estate, and all interested in it, from being harrassed by needless litigation? Surely there can be but one answer to this question, and I fail to see how the legal operation of the discharge can be affected by the omission of the bankrupt to avail himself of the provisions of this section.

I am not unmindful of those cases in the supreme court of the United States, referred to in the opinion of the court, which hold that until the pendency of the proceedings in bankruptcy

is in some proper way brought to the notice of the court in which a suit against the bankrupt may be pending, it is not only the right but the duty of such court to proceed to judgment in the cause; but my attention has not been called to any case in that court which determines the effect of a discharge upon a judgment which might be rendered against the bankrupt in consequence of his failure to procure a stay; although I am aware that, in one of the cases referred to, Justice GRAY suggests the possibility that a judgment might not be discharged; a suggestion which, perhaps, might naturally have been expected from one who formerly, in the state court over which he presided, furnished some of the most important authority for that doctrine.

Upon a complete review of the authorities cited, and consideration of the reasons which have led to their decisions, I am satisfied that the sounder and better view, and the one most in harmony with the whole spirit and purpose of the bankrupt act is that which refuses to consider the debt as extinguished in the judgment, but regards it as a subsisting obligation, provable against the bankrupt's estate, and therefore embraced within the operation and effect of the discharge, notwithstanding the judgment. Another point is presented by the respondent as a reason for the affirmation of the judgment, viz., that under the law as construed by the supreme court of the state of Iowa the discharge in bankruptcy would, in that state, be regarded as an effectual bar to any action on this judgment, and, therefore, by well-established rules of judicial comity, the same effect must be given to it by the courts of any state or territory where an action may be brought on the judgment. Although the precise question at bar has never, so far as I am aware, come before the supreme court of Iowa, a reference to the cases cited shows that that court has adopted such a view of the character and effect of judgment recovered pending proceedings in bankruptcy, as to lead to the result I have reached. Wade v. Clark and Knapp v. Hoyt, *supra.* The conclusion is sustained by the authority of Hagerty v. Amory, 7 Allan, 458.

For all the reasons above stated, I think the judgment of the district court should be affirmed, and must therefore dissent from the conclusion reached by a majority of the court.

FRANCIS, J., concurs in the foregoing views.